IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN BECKSTRAND, ) | CV F 05-0323 AWI LJO |
| ) | |
| Plaintiff, ) | FINDINGS OF FACT AND |
| ) | CONCLUSIONS OF LAW |
| v. ) | |
| ) | |
| ELECTRONIC ARTS GROUP LONG ) | |
| TERM DISABILITY INSURANCE ) | |
| PLAN, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**BACKGROUND**

Plaintiff Bryan Beckstrand's March 7, 2005 complaint for declaratory relief arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1) & (3), *as amended*, ("ERISA"). The complaint alleges that Beckstrand has been diagnosed as suffering from HIV/AIDS and the complications associated with this disease. The complaint alleges that Beckstrand is totally disabled under the terms of Defendant's long term disability plan ("the Plain"). The complaint alleges that on September 8, 2004, Defendant terminated benefits to Beckstrand stating that the medical information it had did not continue to support impairment from a less than sedentary occupation. Beckstrand requests a judicial determination of his

rights and a declaration finding that Defendant is obligated to pay long-term disability benefits.

On August 5, 2005, Beckstrand filed a motion for partial summary judgment regarding the standard of review.  Beckstrand requested a finding by the court that the court's review of this action would be de novo. On August 26, 2005, Defendant filed an opposition.  Defendant contended that the appropriate standard of review is abuse of discretion.  On September 2, 2005, Beckstrand filed a reply.   On November 2, 2005, the court denied Beckstrand's motion for summary judgment and found that the standard of review for this action will be abuse of discretion.

On December 13, 2005, the court held a bench trial.  The court heard oral arguments from the parties.    Pursuant to the court's order, the parties filed Proposed Findings of  Fact and Conclusions of Law and the administrative record.

After considering the administrative record, the parties' Proposed Findings of Fact and Conclusions of Law, and the parties' arguments, the court enters the following Findings of Fact and Conclusions of Law:

**FINDINGS OF FACTS**

1. Pursuant to the Plan, totally disabled and total disability mean, that as a result of an injury or sickness, during the elimination period (of  90 days) and for the first 24 months for which a monthly benefit is payable, the employee cannot perform the material duties of his regular occupation; after a monthly benefit has been paid for 24 months, "you cannot perform the material duties of any occupation. Any occupation is one that your education, training or experience will reasonably allow. We consider you totally disabled if due to an injury or sickness you are capable of only performing the material duties on a part time basis or part of the material duties on a full time basis." AR0658.

2. The Plan has the right, at its expense, to have an employee interviewed or examined, psychologically, and/or psychiatrically to determine the existence of any total disability which is the basis for a claim. The right may be used as is often as is reasonably required

|   |   |   |
|---|---|---|
| 1 |    | while a claim is pending. AR0662. |
| 2 | 3. | The Plan states that monthly benefits will be paid if you: "(1) are Totally Disabled . . ., (2) are under the regular care of a Physician; (3) have completed the Elimination Period; and (4) submit satisfactory proof of Total Disability to us."   AR 0665. |
| 5 | 4. | Plan benefits are fully insured. AR0676. |
| 6 | 5. | Beckstrand lived and worked in the San Jose, California area when he became disabled. |
| 7 | 6. | Beckstrand's primary treating physician was Dr. Razzeca at the Camino Medical Group. |
| 8 | 7. | After Beckstrand became disabled he moved to the Fresno area and Dr. Lutz became his primary treating physician. He also saw Dr. Sundrani for a cardiac evaluation. |
| 10 | 8. | Beckstrand stopped working on June 2, 1998. AR 0034. |
| 11 | 9. | Although his request for benefits was initially denied, his appeal of that denial was granted and Beckstrand was awarded benefits.  See Beckstrand Declaration, Exhibit 4. |
| 13 | 10. | Benefits were terminated on or about September 21, 2000, see Beckstrand Declaration Paragraph 7. Beckstrand again appealed. AR 0215. |
| 15 | 11. | The Plan had Dr. William Hauptman, Board Certified Gastroenterology, Board Certified Internal Medicine, Board Certified Quality Control Assurance and Utilization Review complete a file review on Beckstrand. AR0211. Dr. Hauptman's January 11, 2001 report states: "Mr. Beckstrand has AIDS and is treated with multiple medications his date of disability is June 3, 1998. I reviewed the occupational description of computer programming that indicates the work is sedentary." AR0211. |

\* \* \* \*

"An MRI of the brain was obtained July 14, 1999. This was abnormal and showed punctate regions of increased signal in the subcortical and periventral frontal white matter which were felt to be nonspecific representing possible sequelae of prior infection, small vessel ischemic changes or focal regions of demyeliniation." AR0212.

\* \* \* \*

3

"In an office note dated February 8, 2000 Dr. Razzeca documents the treatment regimen including Sustiva, Agenerase, 3TC, and D4T. She notes patient's complaints of increasing fatigue, nightsweats and depression. She documents that the patient is having difficulty tolerating medications with persistent diarrhea and cramping as well as skin rashes with intense itching. She documented that fatigue was the major problem and was intensified by depression.  Therefore by February 8, 2000 the medical records document continued complaints secondary to both the primary HIV infection and the medication regimen." AR0213.

* * * *

"I reviewed the disability review questionnaire filled out by Mr. Beckstrand around May, 2000. He documented that he could not concentrate well, was easily winded, had difficulty sleeping, had severe and frequent diarrhea, no appetite, dizziness, headaches, and clumsiness. He documented his current medications including Agenerase, Epivir, Zerit, Sustiva, Norvir, Diflucan, Ultrase, Celexa, Acyclovir, and Bactrim." AR0213-0214.

* * * *

"The final office note I have available for review is from September 11, 2000. This office note continues to document complaints of fatigue, chronic headaches, insomnia, decreased concentration and diarrhea. The physician documents 'continues to be plagued with a variety of constitutional ailments.' The CD4 level was documented to be 394. The doctor documented heropinion that the decreased concentration was most likely due to the medication Sustiva." AR0214.

"I reviewed correspondence between Bryan Beckstrand to Reliance dated September 28, 2000. Mr. Beckstrand documents his continued complaints including 'severe chronic fatigue, confusion, dizziness, cognitive dysfunction, insomnia, severe diarrhea, chronic headaches, depression, inability to concentrate, forgetfulness, lack of appetite, and nausea.'" AR0214.

"It is my opinion within a reasonable degree of medical certainty that the medical records through September 11, 2000 continue to support impairment with resultant less than sedentary restrictions and limitations. While the CD4 level is an easy objective parameter to follow, the patient level of symptoms does not always correlate with the CD4 level. This of course is true if the very drugs that are increasing the CD4 level are also responsible for the disabling complaints. The medical records document consistent complaints of fatigue, insomnia, decreased concentration, diarrhea and depression. These complaints are consistent with both the underlying HIV infection and even more so with the medication regimen. The protease inhibitors which this patient is on have numerous side-effects including gastrointestinal upset, rash, depression, drowsiness, dizziness, insomnia, impaired concentration, abnormal dreams, confusion, fever, cough and shortness of breath. Mr. Beckstrand's complaints are consistent with his medication regimen. The medical records consistently document these complaints. It is my opinion that these complaints, particularly the fatigue and decreased concentration, impair the patient resulting in less than sedentary restrictions and limitations." AR0214.

12. The Plan then reinstated Beckstrand's benefits. AR 0193.

13. Benefits were terminated again by letter dated November 19, 2003. AR 0100-0103.

14. Benefits were reinstated January 6, 2004. AR 0097.

15. Between February 8, 2000 and February 25, 2002, Beckstrand's medical records show routine reports of fatigue, diarrhea, and inability to concentrate.  AR0577 (2/8/00); AR0554 (2/8/00);  AR0553 (3/14/00); AR0551 (4/13/00); AR0572-0576 (4/20/00); AR0549 (5/11/00); AR0239 (8/21/00);  AR0240 (9/11/00); AR0507-0508 (12/3/01); AR0504-0505 (1/10/02); AR0494-0495(2/25/02).

16. Dr. Lutz's January 20, 2003 records state: "Feels about the same. C/o fatigue, diarrhea. Has 1 to 5 stools, usually loosely formed but sometimes extremely watery. Some crampy abdominal discomfort. . . . lipids too high." AR0442-443.

17. Dr. Lutz's March 3, 2003 records state: "Now on Pravachol 80 mg./day. Still with much fatigue. . . .diarrhea 5/d, takes loperamide [two] once daily. . . . paresthesis, numbness, low back pain, legs. . . . stable but chronic fatigue and chronic diarrhea preclude gainful occupation at this time."AR0440-AR0441.

18. Dr. Lutz's April 3, 2003 records state: "Fever to 101.2. Onset yesterday. Sweats, headache. No sore throat slight nonproductive cough. . . . Probably viral URI. Influenza not excluded." AR0438-AR0439.

19. Dr. Lutz's July 16, 2003 records state: "C/o increased fatigue." AR0434.

20. A February 23, 2004 medical report notes chest pain.  AR0389-0391

21. Dr. Lutz's February 23, 2004 records state: "went to urgent care. Had respiratory tract infection. . . . fever 101.9. . . .subsequent sharp chest pain, present several months 2 or 3x/week. . . . nausea." AR0395.

22. Dr. Lutz's records for April 3, 2003, June 11, 2003, July 16, 2003, and October 15, 2003, February 23, 2004, do not indicate Beckstrand was suffering from symptoms such as nausea, diarrhea, and poor memory.   AR 0395 (2/23/04); 0432 (10/15/03); 0434 (7/16/03); 0436 (6/11/03); 0438 (4/3/03).  The February 23, 2004 records indicate nausea.  AR 0395.

23. On April 19, 2004, Beckstrand was taking Epivir, Zerit, and Sustiva, Celexa, and Pravachol. AR0410.

24. Dr. Sundrani's April 19, 2004 records regarding his Initial Cardiac Evaluation stated. "[Beckstrand] has been having chest pain, which is retrosternal. . . .There is a suggestion of mild sleep apnea. . . . History of hyperlipidemia because of reverse transcript ACE inhibitors. . . . This chest pain is fairly atypical. He has risk factors for coronary artery disease, which includes hyperlipidemia because of reverse transcript ACE inhibitors. There is a suggestion of pain always after exertion. Considering this, I would like to do a stress echocardiogram." AR0383-0385.

6

25. Dr. Sundrani's June 25, 2004 records state: "This maximal stress echocardiogram is negative for any stress induced ischemia or arrhythmia. His chest pain is most likely noncardiac in origin. The patient was explained these results in detail." AR0386.

26. Dr. Lutz's September 29, 2004 records state: "tries to exercise e.g., weight lifting, bicycling. However, often too fatigued to do so. . . . Fatigue . . . nausea . . . diarrhea. . . 3or 4 a day . . . HA[headaches] . . ." AR0392.

"HIV (not AIDS), High lipids, Chronic fatigue. . . . f/u two months." AR0394.25.

A CD4 count of 600 or above is normal. A viral load of under 50 is normal.

27. Beckstrand's lab results show that his CD4 count was always above 600 except the testing done on October 2, 2001. Beckstrand's lab results show that his viral load has always been below 50 except the lab results of October 2, 2001. As of October 8, 200, Beckstrand did not have medication and therefore was off his anti-virals. AR 0517-0518.

28. Defendant scheduled an examination of Beckstrand with Dr. Manthani Reddy. AR 0417.

29. On February 26, 2004 and April 7 2004, Dr. Reddy examined Beckstrand. Dr. Reddy did not report that Beckstrand was suffering from diarrhea or nausea. Dr. Reddy did report fatigue. Dr. Reddy also reported a history of sleep disturbance, anxiety, and depression. AR 0417-18.

30. Dr. Reddy concluded by saying "I suggest the patient to be seen probably by a psychiatrist for an optimal regimen of anxiety and depression. From an HIV prospective, his viral load is undetectable, and his CD4 count is greater than 600 and [he] appears to be on a fairly good regimen of highly antiretroviral therapy." AR 0419.

31. Beckstrand's benefits were denied by letter dated September 8, 2004, AR 0075- 0078, and Beckstrand appealed.

32. Defendant had Dr. Daniel S. Berman review Beckstrand's records. AR 0047.

33. Dr. Berman described Beckstrand's physical condition as follows: "His HIV infection is under good control. This diagnosis is not limiting the claimant's ability to work in any

7

|   |     |   |
|---|-----|---|
|   |     | way.  No restrictions or limitations should be expected on the basis of this diagnosis." AR 0048. |
| 34. | Dr. Berman stated that it was extremely unlikely that Beckstrand's medications could be causing his symptoms because he had "so many different types, [it] would be virtually impossible."  AR 0047.  Dr. Berman stated he believed Beckstrand's symptoms might be related to depression.  AR 0047. |
| 35. | Beckstrand's appeal was denied by letter dated December 15, 2004.  AR 0042-0046. |
| 36. | Beckstrand's medications changed from the time benefits were initially awarded and the time benefits were discontinued. |

## CONCLUSIONS OF LAW.

1. ERISA provides for judicial review of a decision to deny benefits to an ERISA plan beneficiary.  See 29 U.S.C. § 1132(a)(1)(B).
2. ERISA creates federal court jurisdiction to hear such a claim.  See 29 U.S.C. § 1132(e).
3. A denial of ERISA benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plan."  Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 115 (1989). Where a plan provision purports to confer discretion upon the plan's administrator or fiduciary but the grant of discretion is ambiguous, the de novo standard applies. Bendixen v. Standard Ins. Co., 185 F.3d 939, 943 (9th Cir. 1999).  De novo review of a decision denying benefits may be imposed where there is a conflict between the fiduciary's or administrator's self-interest and the interests of the plan's beneficiaries, a benefits denial decision may be reviewed de novo.  See Bendixen, 185 F.3d at 943 (citations omitted).
4. This Court previously ruled that review of this case will be for abuse of discretion.
5. An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact.  Boyd v.

1   Bell/Rozelle NFL Players Retirement Plan, 410 F.3d 1173, 1178 (9th Cir. 2005); Taft v.
2   Equitable Life Assurance Society, 9 F.3d 1469, 1472- 73 (9th Cir. 1993).

6.  "A finding is 'clearly erroneous' when although there is evidence to support it, the [court] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California, 508 U.S. 602, 622 (1993); Boyd, 410 F.3d at 1178.

7.  The court should uphold the decision of an ERISA plan administrator if the decision "is based upon a reasonable interpretation of the plan's terms and was made in good faith." Boyd, 410 F.3d at 1178.

8.  A decision grounded on any reasonable basis is not arbitrary or capricious, and to be subject to reversal, an administrator's factual findings that a claimant is not totally disabled must be clearly erroneous. Jordan, 370 F.3d at 875.

9.  The abuse of discretion standard does not permit the overturning of a decision simply because it possible to draw two inconsistent conclusions from the evidence. Snow v. Standard Ins. Co., 87 F.3d 327, 331-32 (9th Cir. 1996) (quotation marks and citations omitted), *overruled on other grounds by* Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089-90 (9th Cir. 1999) (en banc).

10. A plan administrator does not abuse its discretion simply because there is evidence before it that would support an opposite decision. Taft, 9 F.3d at 1474

11. The issue before the court is not whether this court, reviewing the evidence in the record, believes that Beckstrand is disabled and that Defendant made a mistake. The court cannot substitute its judgment for the Defendant's, and the court can only set aside the administrator's discretionary determination when it is arbitrary and capricious. Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004).

12. The terms of the Plan made it clear that it was Beckstrand's burden to submit satisfactory proof of Total Disability. Given this standard, this court cannot conclude that it was

unreasonable for defendant to deny Beckstrand benefits on the basis that he failed to prove that his HIV/AIDS disability made him unable to work.

13. Dr. Lutz's records do not provide only one conclusion – that Beckstrand was disabled. The last time Dr. Lutz's records stated Beckstrand was unable to work was March 3, 2003. Beckstrand did not see Dr. Lutz between February 23, 2004 and September 29, 2004. While the September 29, 2004 records indicate fatigue, nausea, diarrhea, and fatigue, there is no indication this was Beckstrand's situation for all of 2003 and 2004. Most of the 2003 reports do not indicate nausea, diarrhea, poor memory, or other conditions that caused Dr. Lutz to conclude Beckstrand could not work.

14. The court cannot find an abuse of discretion because Defendant never asked Dr. Lutz specific questions about whether Beckstrand could work as of 2004 and never asked for his response to the opinion that the majority of Beckstrand's symptoms were caused by depression. The court's review is limited to examining the administrative record and "not whether it would have liked to have developed even more evidence or whether it would be interested in what other experts might think." Snow, 87 F.3d at 332. The purpose of this instruction is to avoid "a morass of minutely detailed examinations of every decision made by plan administrators." Id. at 333.

15. Even had Dr. Lutz concluded Plaintiff could still not work, the Plan would not be bound to such a conclusion. The court may not accord special weight to the opinions of a plaintiff's physician, nor is a defendant required to explain why it credited conflicting reliable evidence over the treating physician's evaluation. Black and Decker Disability Plan v. Nord, 538 U.S. 822, 833-34 (2003). In light of Dr. Reddy's and Dr. Berman's opinions, Defendants' conclusion was not arbitrary and capricious.

16. The fact Defendant required Beckstrand to apply for social security benefits and Beckstrand was granted social security benefits, arguably to Defendant's benefit, does not make Defendant's decision arbitrary or capricious. It is not arbitrary and capricious to

10

|   |   |   |
|---|---|---|
| 1 | | deny benefits even if there has been a finding by the social security board that the plaintiff |
| 2 | | was totally disabled.  Madden v. ITT LTD Plan, 914 F.2d 1279, 1285-86 (9th Cir. 1990). |
| 3 | 17. | The abuse of discretion standard permits the court to review only the evidence presented |
| 4 | | to Defendant as part of the administrative record.  Taft, 9 F.3d at 1471.  The court may |
| 5 | | not look at new evidence to find a determination unreasonable because that evidence was |
| 6 | | not before the decision-maker at the time of the decision. Taft, 9 F.3d 1469 at 172. |
| 7 | | According to the Ninth Circuit, the administrative record consists of those materials in |
| 8 | | the record at the time Defendant's decision was made.  Haynes v. United States, 891 F.2d |
| 9 | | 235, 238 (9th Cir.1989).  Beckstrand never submitted documents to Defendant describing |
| 10 | | the side effects of his medications. The court cannot consider these documents. |
| 11 | 18. | Even considering evidence that Beckstrand's medications have side effects, the court |
| 12 | | does not find Defendant's decision an abuse of discretion.   Defendant had evidence |
| 13 | | before it that it was unlikely Beckstrand's medications could be causing the wide range of |
| 14 | | symptoms of which Beckstrand complained.   In addition, Dr. Lutz's records from 2003 |
| 15 | | and 2004 do not confirm Beckstrand's daily symptoms were as severe as those described |
| 16 | | by Beckstrand in his appeal letters. |
| 17 | 19. | The Plan was not bound to Dr. Hauptman's January 11, 2001 findings.   Dr. Hauptman's |
| 18 | | findings were based on records available at that time, and did not include the 2003 and |
| 19 | | 2004 records.   Beckstrand's medications also changed over time. |
| 20 | 20. | Defendant's decision was not an abuse of discretion because Defendant explained why it |
| 21 | | denied Beckstrand benefits and allowed Beckstrand to appeal these findings. |
| 22 | 21. | Defendant did not construe the Plan's provisions in a way that conflicts with the plain |
| 23 | | language of the Plan. |
| 24 | 22. | Defendant did not rely on clearly erroneous findings of fact.  To hold that Defendant |
| 25 | | abused its discretion by finding Beckstrand no longer disabled, the court would have to |
| 26 | | conclude that the entire record leads to a "definite and firm conviction that a mistake has |
| 27 | | |
| 28 | | 11 |

been committed" by Defendant concluding that Beckstrand was not disabled  <u>See Concrete Pipe</u>, 508 U.S. at 622.   The court does not have such a definite and firm conviction in this case.

**ORDER**

1. Beckstrand has failed to prove his claims for relief.

2. The Clerk of the Court is DIRECTED to enter judgment for Defendant.

IT IS SO ORDERED.

**Dated:     October 20, 2006**              _____/s/ Anthony W. Ishii_____
0m8i78                                               UNITED STATES DISTRICT JUDGE

12