# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN BECKSTRAND, | No. 05-cv-0323-AWI-NEW (TAG) |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART |
| vs. | MOTION TO REOPEN/PERMIT DISCOVERY |
| ELECTRONIC ARTS GROUP LONG TERM DISABILITY INSURANCE PLAN, | (Doc. 45) |
| Defendant. | |

Plaintiff Bryan Beckstrand ("Beckstrand") filed the instant motion to reopen and permit discovery. A hearing on the motion was held before the undersigned on May 21, 2007. Beckstrand's counsel, Robert Rosati, and Robert Pohls, counsel for the defendant, appeared telephonically. This Court took the matter under submission and now rules as follows.

**Background**

Plaintiff Bryan Beckstrand ("Beckstrand"), while employed by Electronic Arts Group ("EAG"), participated in, and qualified as a beneficiary of, EAG's Group Long Term Disability Plan (the "Plan"), which was subject had been organized and operated under the provision set forth in ERISA.[1] At all relevant times, Reliance Standard Life Insurance ("RSL") both funded and administered the Plan. Beckstrand, who suffers from HIV/AIDS, applied for disability benefits under the Plan in 1999. The Plan granted Beckstrand benefits, but terminated the benefits at a

---

[1] ERISA is the acronym for the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1000 et seq. ERISA plans are subject to, inter alia, funding, administrative, reporting, and various rules and regulations to protect interstate commerce and plan beneficiaries. See 29 U.S.C. § 1001.

1

subsequent administrative hearing and appeal. On March 7, 2005, Beckstrand filed the instant action seeking declaratory relief. (Doc. 1).

On August 5, 2005, Beckstrand filed a motion for partial summary judgment contending that the Court should review the Plan's decision de novo rather than for abuse of discretion, based on various reasons, including, inter alia, its conclusion that he was not disabled based on the same evidence that it had relied upon when it found him eligible for benefits. (Docs. 13, 14). In its response, the Plan noted that, because it granted RSL discretionary authority, the standard of review should be for abuse of discretion. (Doc. 15). The Court denied Beckstrand's motion and specifically stated that the administrative record would be reviewed for abuse of discretion. (Doc. 20).

After holding a bench trial, the Court entered judgment for the Plan on October 23, 2006. (Docs. 26, 31, 32). On November 1, 2006, Beckstrand filed a motion to amend the judgment based on an intervening Ninth Circuit en banc decision, Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. 2006), pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. (Doc. 33). In his motion, Beckstrand asserted that the Court also should reopen, and allow him to conduct, discovery. (Id.). The Plan agreed that the judgment should be set aside, but disputed that Abatie entitled Beckstrand to propound additional discovery. (Doc. 34). On January 19, 2007, the Court granted Beckstrand's Motion to Amend Judgment, vacated the judgment, and re-opened the case. (Doc. 37). The Court, however, deferred ruling on the issue of discovery. (Id.).

**Motion to Reopen and Permit Discovery**

On March 16, 2007, Beckstrand filed a "Motion to Reopen/Permit Discovery," requesting that this Court allow him to engage in limited discovery to ascertain if, and the extent to which, bias, conflicts of interest, or procedural irregularities were present at the administrative level such that it would affect the level of deference that this Court should accord the administrator's decision. Beckstrand contended that none of this information would have been relevant or admissible before Abatie. (Doc. 45). Beckstrand also sought leave to submit a medical evaluation to rebut the opinion of Dr. Berman, whose report RSL relied on during the administrative appeal. (Doc. 45). The Plan objected, asserting that Beckstrand could have conducted the discovery he now sought when he filed

2

his motion for partial summary judgment, that nothing prevented Beckstrand from propounding discovery earlier, that <u>Abatie</u> did not create a new rule regarding discovery in ERISA cases, and that the Court, in rendering a judgment, was limited to the administrative record once it was determined whether the standard of review was <u>de</u> <u>novo</u> or for abuse of discretion. (Doc. 46). Beckstrand acknowledged that <u>Abatie</u> did not create a new discovery rule, but contended that it created new criteria for applying the abuse-of-discretion standard of review and held that extrinsic evidence was admissible for the purpose of determining the level of deference to be accorded the administrator's decision. (Docs. 45, 47).

**Discovery Requests**

      1. <u>Interrogatories</u>

In his motion, Beckstrand seeks to propound interrogatories regarding two doctors upon whose evaluations the decision to terminate his disability benefits was based. According to Beckstrand, the interrogatory responses will reveal whether the doctors were predisposed to provide an opinion favorable to the Plan and would ensure that they were familiar with his disease, from which it could be determined whether there was a conflict of interest as well as whether Beckstrand had a fair hearing. In order to obtain this information, Beckstrand proposes to ask the following four questions to be answered with respect to each doctor, for a total of eight interrogatories:

1. Describe <doctor>'s training and experience treating patients with HIV/AIDS.
2. How many HIV/AIDS patients has Dr. <name> treated since January 2000.
3. How many disability claims has <doctor> evaluated at the request of the RSL since January 1, 2000?
   - A. How many times did he conclude that the claimant was disabled?
   - B. How many times did he conclude that the claimant was not disabled?
   - C. How many times did he recommend additional tests?
4. Describe all contacts and communications between RSL and <doctor>, directly or indirectly, regarding Plaintiff which are not documented in the Administrative Record. (That is, was there a "back channel" in which the doctor was instructed regarding his opinion?)

(Doc. 45-3, pp. 10-11).

B. <u>Requests for Production of Documents</u>

Beckstrand also seeks leave of court to issue requests for the production of the following documents, which, according to Beckstrand, will reveal whether RSL had any internal standards or protocol and, if so, whether RSL adhered to them during Beckstrand's administrative proceedings. The intent is to elicit and/or demonstrate procedural irregularities, which, Beckstrand contends, also constitutes a factor to be weighed in determining how much deference to be accorded the administrative record. (Doc. 45). Specifically, Beckstrand asked that he be permitted to serve requests for production of documents on the Plan to obtain the following materials:

1. All documents setting forth or constituting RSL's claims manuals, training manuals, or any other documents setting forth RSL's standards, practices, protocols, or criteria for evaluating disability and/or long term disability claims as in effect from January 1998 through January 31, 2006 and any changes thereafter.

2. All Documents setting forth RSL's standards, practices, procedures or protocols for processing appeals of denials of terminations of long term disability claims as in effect from January 1998 through January 31, 2006 and any changes thereafter.

3. All Documents setting forth RSL's standards, criteria, protocol, rules, or regulations regarding evaluation of claimants who have HIV/AIDS.

4. All Documents setting forth or constituting RSL's standards, criteria, protocol, rules or an regulations regarding the weight to be accorded Social Security Disability determinations of claimants who are applying for long term disability benefits from RSL.

(Doc. 45-3, p. 11).

C. <u>Submission of Additional Medical Report</u>

In addition to the foregoing discovery, Beckstrand seeks leave of court to submit a medical evaluation to rebut the opinion prepared by Dr. Berman, upon which RSL relied during Beckstrand's administrative appeal. (Doc. 45-3, p. 4). Beckstrand asserts that, under <u>Abatie</u>, denying him the opportunity to respond to Dr. Berman's opinion constitutes an impermissible procedural irregularity. (Doc. 45-3, p. 4). The Plan responded that permitting a claimant to review a doctor's opinion before an administrative decision was rendered was not allowed under this Court's precedent. (Doc. 46, p. 7).

4

**Relevant Law**

In Abatie, the Ninth Circuit reiterated that, unless the language of an ERISA plan confers discretion on the administrator "to determine eligibility for benefits or to construe the terms of plan, a court must review the denial of benefits de novo." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (quotations and citations omitted). Before Abatie, if the plan expressly conferred discretion on the administrator, the standard of review was for abuse of discretion only. Id. This Circuit, however, previously employed a burden-shifting approach under which, if the plaintiff presented material, probative evidence sufficient to demonstrate that an insurer who both administered and served as the funding source of the plan (a "conflicted administrator") denied benefits because of this conflict of interest, or self-interest, thereby breaching his fiduciary responsibilities, "the burden . . . shifted to the administrator to prove that the conflict of interest did not affect his decision." Id. at 966. If the administrator could not meet his burden, the de novo standard of review would be employed by the court. Id.; see Atwood v. Newmont Gold Co., 45 F.3d 1317 (9th Cir. 1995) (creating the burden-shifting analytical approach), overruled by Abatie, 458 F.3d at 966-67. The en banc Circuit Court rejected this burden-shifting approach, finding, inter alia, that it imposed an undue burden on the ERISA beneficiaries (plaintiffs) and that it did not comply with the requirements set forth in Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111-13, 109 S.Ct. 948, 954-56 (1989). Abatie, 458 F.3d at 966-67.

The Abatie decision provided a different analytical method for courts to employ when reviewing, for abuse of discretion, ERISA cases that involve conflicted administrators. See id. at 967-73. First, Abatie held that any conflict of interest is a factor that must be weighed on a case-by-case basis. Id. at 968. Abatie noted that the use of a "straightforward abuse of discretion analysis" enables the district court to "tailor its review to all the circumstances before it." Id. (citation omitted). The Ninth Circuit stated that

> A district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage. An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might.

5

Id. The weight that the court may attribute to a conflict of interest and, hence, the degree of deference it will accord the administrator's decision, may be based upon evidence of, inter alia, "malice, self-dealing, . . . a parsimonious claims-granting history, [or] inconsistent reasons for denial." Id. Under Abatie, the district court can consider extraneous evidence, that is, evidence other than that contained in the administrative record, when deciding the nature, extent, and effect of the administrator's conflict of interest, if any, on the decision to deny benefits. Id. at 970.

With respect to procedural irregularities at the administrative level, Abatie stated that administrators are required to comply with the requirements of both ERISA and the plan under which the claimant sought benefits. Id. at 971. As an initial matter, unless the violation of ERISA and/or the plan's rules are "wholesale and flagrant," the court should not employ a de novo standard of review when the plan grants discretion to the administrator. Id. In general, the district court should apply the same analysis as that discussed above when there appears to be a procedural irregularity. See id. at 971-73. "A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion." Id. at 972. Abatie cites with approval several cases from other courts that have held that the level of deference accorded the administrator's decision varies depending upon the nature and extent of the procedural irregularity. Id. Again, extrinsic evidence may be considered to ascertain whether there were any procedural irregularities and, if so, the that it had on the administrator's decision. Id. at 973.

Once the district court has determined the level of deference to accord the administrator's decision based on a conflict of interest or procedural irregularity, the court's ruling on the merits of the case is limited to the administrative record. No extrinsic evidence on the merits will be considered unless the standard of review is de novo or the procedural irregularity resulted in an incomplete record, in which case the court may permit additional evidence to "recreate what the administrative record would have been had the procedure been correct." Id. at 970-71, 973.

In a recent decision, the Ninth Circuit reiterated its prior opinion, which conformed to the opinions in several federal appellate courts, and stated that:

///

6

> a district court should not take additional evidence merely because someone at a later time comes up with new evidence and that [i]n most cases only the evidence that was before the plan administrator at the time of determination should be considered.[2]

Opeta v. Northwest Airlines Pension Plan for Contract Employees, 484 F.3d 1211 (9th Cir., May 7, 2007) (brackets in original) (quotations and citations omitted).  It should be noted that Opeta, and the cases it references, were appeals from decisions made under a de novo standard of review, in which extrinsic evidence on the merits is more likely to be admissible.  Abatie, 455 F.3d at 970-71.  Moreover, in a decision modified after Abatie, this Circuit noted that a district court may consider only evidence within the administrative record at the time of the administrator's decision when the standard of review is for abuse of discretion.  Silver v. Executive Car Leasing Long-Term Disability Plan, 466 F.3d 727, 732 n.2 (9th Cir. 2006).  The three-judge panel further stated that this restriction is based on the principle that district courts should not function "as substitute plan administrators," and that expanding the record on appeal "would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme."  Id. (quoting Perry v. Simplicity Eng'g, 900 F.2d 963, 967 (6th Cir.1990)).

**Conclusion**

In the instant case, neither party contends that the standard of review is de novo.  (See generally docket).  As discussed above, under the new analytical approach set forth in Abatie, extrinsic evidence is admissible not as part of a burden-shifting paradigm, but as a factor for the district court to weigh in determining what effect, if any, a conflict of interest or procedural irregularity will have on the level of deference to be accorded the administrator's decision.  Before Abatie, such evidence was relevant only to the extent that it offered material proof that the administrator was so conflicted that his decision should be reviewed de novo.  Thus, absent probative evidence of a severe conflict, discovery that would lead to evidence that, among other things, the plan had a record of denying benefits, continuously retaining doctors who rendered opinions favorable to the plan, or had standards or protocols with which the administrator complied,

---

[2] During the hearing, Beckstrand's counsel admitted that he did not have a medical report to rebut Dr. Berman's opinion, but would have to ask a doctor to prepare the evaluation.

7

was of no use to a plaintiff. Such evidence now goes to the deference that the court will use in reviewing the merits of the case and, thus, is relevant and admissible under <u>Abatie</u>. The introduction of extrinsic, additional evidence on the merits of the case, however, remains inadmissible – once the level of deference is determined by the court, its ruling on the merits must be based solely on the administrative record.

      Based on the foregoing, IT IS HEREBY ORDERED THAT:

      1. The Motion to Reopen/Permit Discovery, (Doc. 45), is GRANTED IN PART AND DENIED IN PART;

      2. Plaintiff is GRANTED LEAVE to serve the proposed interrogatories and requests for production of documents on Defendant, (Doc. 45-3);

      3. Defendant is ORDERED to respond to the interrogatories within thirty (30) days of the date that the interrogatories are served by Plaintiff upon Defendant;

      4. Defendant is ORDERED to respond to the requests for production of documents, and to produce all non-privileged and/or non-objectionable documents, together with a privilege log and/or a reason for non-production, as appropriate, within thirty (30) days of the date that the requests for production of documents are served by Plaintiff upon Defendant; and

      5. Plaintiff's request to submit a rebuttal medical evaluation is DENIED, (Doc. 45-3).

IT IS SO ORDERED.

Dated: **June 4, 2007**                                                                      /s/ Theresa A. Goldner
                                                                            UNITED STATES MAGISTRATE JUDGE